**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Shattuck Labs, Inc. Securities Litigation<br><br>CLASS ACTION<br><br><br>This Document Relates To:<br>All Actions | Case No. 1:22-cv-00560-CBA-RML<br><br>CLASS ACTION |

**STIPULATION OF SETTLEMENT**

This Stipulation of Settlement (the "Stipulation"), dated  December 13, 2022, is entered into among Lead Plaintiff Scott Harrison and Named Plaintiff Andrea Viti ("Plaintiffs"), on behalf of themselves and the Settlement Class (as defined below), and Defendants Shattuck Labs, Inc. ("Shattuck" or "the Company"), Taylor Schreiber, Andrew Neill, Josiah Hornblower, Helen M. Boudreau, Neil Gibson, George Golumbeski, Michael Lee, Tyler Brous, and former defendant Victor Stone (together with Shattuck, "Shattuck Defendants"), and voluntarily dismissed defendants Citigroup Global Markets Inc., Cowen and Company, LLC, Needham & Company, LLC, and Evercore Group L.L.C. (collectively, the "Voluntarily Dismissed Underwriters" and with the Shattuck Defendants, "Defendants"), through their respective counsel of record, and embodies the terms and conditions of the settlement of the above-captioned litigation (the "Action"). This Stipulation is intended to fully, finally, and forever resolve, discharge and settle with prejudice all claims asserted in this Action against Defendants subject to the approval of the United States District Court for the Eastern District of New York (the "Court").

I.      **THE LITIGATION**

A.      **Procedural History of the Litigation**

This class action lawsuit is settled on behalf of a Settlement Class consisting of (1) all persons who purchased or otherwise acquired Shattuck common stock pursuant or traceable to Shattuck's Initial Public Offering Registration Statement, in connection with the Company's October 9, 2020 Initial Public Offering, on or before November 8, 2021; and (2) all persons who purchased or otherwise acquired the common stock of Shattuck between February 17, 2021 and November 8, 2021, inclusive (the "Class Period"), and who held shares past November 8, 2021 (the "Settlement Class Period").[1]

The first action, styled *Viti v. Shattuck Labs, Inc., et al.,* Case No. 1:22-cv-00560, was commenced on January 31, 2022 in the United States District Court for the Eastern District of New York and alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act") (Dkt. No. 1)[2] ("*Viti* Action"). On February 11, 2022, a related action, styled *Aamoth v. Shattuck Labs, Inc., et al.*, Case No. 1:22-cv-0079, was filed in the United States District Court for the Eastern District of New York, asserting violations of Sections 10(b) and 20(a) of the Exchange Act, and Sections 11, 12(a)(2), and 15 of the Securities Act ("*Aamoth* Action").

On April 1, 2022, Plaintiffs moved for consolidation of the related actions, appointment as lead plaintiffs, and approval of lead counsel (Dkt. Nos. 9-11). On June 2, 2022, the Court granted Scott Harrison's motion and issued an order consolidating the *Viti* and *Aamoth* Actions, appointing Plaintiff Scott Harrison as Lead Plaintiff, appointing The Rosen Law Firm, P.A. as Lead Counsel,

---

[1] The Settlement Class Period corrects the date of Shattuck's IPO from October 13, 2020, the date Shattuck filed the IPO Prospectus with the SEC, to October 8, 2020, the date of the Prospectus.
[2] Unless otherwise indicated, all references to "Dkt" are to the docket for the *Viti* Action.

and approving a briefing schedule of possible motions to dismiss (Dkt. No. 24).

On July 1, 2022, Plaintiffs filed the Consolidated Class Action Complaint for Violations of the Federal Securities Laws ("Consolidated Complaint") (Dkt. No. 28). On July 14, 2022, the Amended Consolidated [Corrected] Complaint was filed (Dkt. No. 30).

On July 19, 2022, Plaintiffs filed a Notice of Voluntary Dismissal dismissing the Voluntarily Dismissed Underwriters from the Action without prejudice. (Dkt. No. 31.) On August 30, 2022, the remaining Defendants moved to dismiss the Consolidated Complaint as amended, and filed a letter notifying the Court of the same (Dkt. No. 32).

On October 27, 2022, the Court entered a Stipulation and Order granting a Motion to Amend/Correct/Supplement. Per the Order, Plaintiffs' obligation to respond to the remaining Defendants' Motion to Dismiss was stayed indefinitely, pending amendment to the Consolidated Complaint in accordance with the schedule detailed in the Order.

On November 2, 2022, the Parties executed a Term Sheet to Settle the Class Action, agreeing in principle to resolve the claims asserted in the Action for $1,4000,000 in return for a release of all claims against the Defendants, as further detailed below ("Settlement").

**B.    Lead Plaintiffs' Assessment of the Claims and Benefits of Settlement**

Plaintiffs believe that the claims asserted in the Action, as reflected in Plaintiffs' investigation to date, have merit.  Additionally, Lead Counsel have researched the applicable law and believe that any defenses Defendants raise can be refuted. Nonetheless, Plaintiffs and Lead Counsel recognize the expense and length of continued prosecution of the Action against Defendants through completion of discovery, trial, and any subsequent appeals.

Plaintiffs and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Settlement Class, is fair, reasonable, adequate, and in the best interests of the Settlement Class.

**C.      Defendants' Denials of Wrongdoing and Liability**

Defendants have denied and continue to deny each and all of the claims asserted in the Action and expressly deny, *inter alia*, that Defendants have engaged in any wrongdoing. Defendants deny, without limitation, that any wrongdoing related to Shattuck's Registration Statement occurred.  Defendants further deny, without limitation, that any public statements made by or attributed to them were false or misleading; that they failed to disclose any material information to investors; that they acted in any deceitful manner, or otherwise acted with scienter under the Exchange Act.  Defendants deny that any investment losses sustained by Plaintiffs and the Settlement Class were caused by Defendants' alleged misconduct. Defendants believe that the Action is without merit, that any public statements during the Settlement Class Period, including in the Registration Statement, contained no material misstatements or omissions, and that they otherwise complied with all applicable rules, regulations, and laws.   In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Action.

Nonetheless, taking into account the uncertainty and risks, expenses, length of time, and business distraction, among other things, inherent in any litigation, especially in complex cases such as this Action, Defendants have concluded that further litigation of the Action would be protracted, burdensome, and expensive, and that it is desirable and beneficial that the claims asserted in the Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Stipulation.

**II.      TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT**

**A.      Introduction**

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiffs (individually and on behalf of all members of the Settlement Class) and Defendants, and each of them, by and through their respective undersigned counsel or attorneys of record, subject

to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that in consideration of the benefits flowing to the Parties from the Settlement set forth herein, all Released Claims Against Defendants and all Released Claims Against Plaintiffs shall be fully and finally compromised, settled, released, resolved, relinquished, waived, and discharged, and the Action shall be dismissed with prejudice against all Defendants, upon and subject to the terms and conditions of this Stipulation.

**B.     Definitions**

As used in this Stipulation, the following terms have the meanings specified below:

1.0     "Action" means *In re Shattuck Labs Securities Litigation*, Case No. 1:22-cv-00560-CBA-RML.

1.1     "Authorized Claimant" means any member of the Settlement Class who is a Claimant (as defined in ¶ 1.4) and whose claim for recovery has been allowed pursuant to the terms of this Stipulation.

1.2     "Bar Date" means the date of the Final Approval Hearing, as defined below.

1.3     "Business Day" means any day except a Saturday or Sunday or other day on which national banks are authorized by law or executive order to close in the State of New York.

1.4     "Claimant" means any Settlement Class Member (as defined in ¶ 1.40) who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe.

1.5     "Claims Administrator" means the firm Strategic Claims Services, which shall administer the Settlement.

1.6      "Class Counsel" means The Rosen Law Firm, P.A. following appointment by the Court in the Final Approval Order as counsel for the Settlement Class.

1.7    "Compensatory Award" means a payment to the Plaintiffs from the Settlement Fund for the time and expenses expended by the Plaintiffs in assisting Lead Counsel in the litigation of this Action, as further described in ¶ 9.0

1.8    "Court" means the United States District Court for the Eastern District of New York.

1.9    "Defendants" means Shattuck, Taylor Schreiber, Andrew Neill, Josiah Hornblower, Helen M. Boudreau, Neil Gibson, George Golumbeski, Michael Lee, Tyler Brous, former defendant Victor Stone, and voluntarily dismissed defendants Citigroup Global Markets Inc., Cowen and Company, LLC, Needham & Company, LLC, and Evercore Group L.L.C.

1.10    "Defendants' Counsel" means the law firms (1) King & Spalding LLP on behalf of Defendants Shattuck, Taylor Schreiber, Andrew Neill, Josiah Hornblower, Helen M. Boudreau, Neil Gibson, George Golumbeski, Michael Lee, Tyler Brous, and Victor Stone; and (2) Skadden, Arps, Slate, Meagher & Flom, LLP on behalf of Voluntarily Dismissed Underwriters Citigroup Global Markets Inc., Cowen and Company, LLC, Needham & Company, LLC, and Evercore Group L.L.C.

1.11    "Effective Date" means the first date by which all of the events and conditions specified in ¶ 10.0 of the Stipulation have been met and have occurred.

1.12    "Escrow Account" means an account to hold the Settlement Fund.

1.13    "Escrow Agent" means Huntington National Bank.

1.14    "Exchange Act" means the Securities Exchange Act of 1934, as amended.

1.15    "Final" means: (1) the Court has entered a Judgment approving the Settlement in all material respects, including but not limited to, *inter alia,* (a) certifying a Settlement Class, (b) approving the scope of the Releases, and (c) ordering the Clerk of the Court to enter final judgment

in the form set forth in Exhibit F pursuant to Federal Rule 54(b), finding that there is no just reason for delay of enforcement or appeal of the order.; and (2) (a) the time for taking an appeal from the Judgment has expired, no appeal is taken, and the Judgment is no longer subject to further appeal or review, or (b) an appeal or appeals from the Judgment is taken and all such appeals are dismissed prior to a ruling of the appellate court and the Judgment is no longer subject to further appeal or review, or (c) the Judgment has been affirmed in all respects on any appeal or review and is no longer subject to further appeal or review.  Provided, however, and notwithstanding any provision to the contrary in this Settlement, "Final" shall not include (and the Settlement is expressly not conditioned upon) the Court's approval of attorneys' fees and the reimbursement of expenses sought by Lead Counsel, or the approval of payment of a Compensatory Award.

1.16   "Final Approval Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

1.17   "Individual Defendants" means Taylor Schreiber, Andrew Neill, Josiah Hornblower, Helen M. Boudreau, Neil Gibson, George Golumbeski, Michael Lee, Tyler Brous, and Victor Stone.

1.18   "Judgment" means the final order and judgment to be entered by the Court approving the Settlement, substantially in the form attached hereto as Exhibit F or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action.

1.19   "Lead Counsel" means The Rosen Law Firm, P.A.

1.20   "Term Sheet" means the Term Sheet to Settle Class Action entered into on November 2, 2022, between Plaintiffs and Defendants.

1.21    "Notice" means collectively, the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing ("Long Notice"), the Summary Notice of Pendency and Proposed Class Action Settlement ("Publication Notice"), and the Postcard Notice ("Postcard Notice"), which are to be made available to Settlement Class Members substantially in the forms attached hereto as Exhibits B, C, and D, respectively, on the Claims Administrator's website and/or mailed or emailed to Settlement Class Members.

1.22    "Notice and Administration Expenses" means the reasonable fees and expenses incurred by, and the reasonable fees charged by, the Claims Administrator in connection with the administration and notice of the settlement upon presentation of customary invoices therefor, which invoices have been approved by Lead Counsel, including, without limitation: the cost of identifying and locating members of the Settlement Class, mailing Notice and Proof of Claim and publishing the Publication Notice (such amounts shall include, without limitation, the actual costs of publication in national newswires, printing and mailing the Notice, and reimbursement to nominee owners for forwarding notice to their beneficial owners), soliciting Settlement Class claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund (as defined below) to Authorized Claimants, processing Proof of Claim and Release forms, and paying escrow fees and costs, if any, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims.

1.23    "Parties" means Plaintiffs and Defendants.

1.24    "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association,

government, or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

1.25    "Plan of Allocation" means a plan or formula for allocating the Net Settlement Fund, as described in ¶ 7.2 below, to Authorized Claimants.  Any Plan of Allocation is not part of this Stipulation and Defendants shall have no responsibility or liability with respect thereto. The plan of allocation will be separate from the Stipulation and will be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation. Any order of the Court modifying or rejecting the plan of allocation will not operate to terminate the Settlement or affect the finality or binding nature of the Settlement.

1.26    "Postcard Notice" means the postcard notice to be sent to Settlement Class Members substantially in the form attached hereto as Exhibit D, and which shall contain information relating to, among other things, how to access the Long Notice, Stipulation, and file a Proof of Claim.

1.27    "Preliminary Approval Order" means the order certifying the Settlement Class for settlement purposes only, preliminarily approving the Settlement, and authorizing notice thereof and related matters set forth as Exhibit A hereto.

1.28    "Proof of Claim" means the Proof of Claim and Release Form to be submitted by Claimants, substantially in the form attached as Exhibit E.

1.29    "Publication Notice" means the Summary Notice of Pendency and Proposed Settlement of Action and Final Approval Hearing thereon to be published on a national business newswire, substantially in the form attached as Exhibit C.

1.30    "Releasing Parties" means the: (1) Releasing Plaintiffs with respect to the Released Claims Against Defendants; and (2) Defendants with respect to the Released Claims Against Plaintiffs.   "Released Parties" shall mean (1) Plaintiff Releasees with respect to the Released Claims Against Plaintiffs; and (2) Defendant Releasees with respect to the Released Claims Against Defendants.

1.31    "Defendant Releasees" means Defendants, and Defendants' current or former parents, subsidiaries, affiliates, predecessors, successors, divisions, joint ventures, and general or limited partnerships, and each of their respective current or former officers, directors, trustees, partners, members, contractors, auditors, principals, agents, managing agents, employees, representatives, associates, attorneys, accountants, investment bankers, underwriters, insurers, or reinsurers in their capacities as such, as well as each of the immediate family members, heirs, executors, personal or legal representatives, estates, beneficiaries, predecessors, successors and assigns of the Defendants and other individuals referred to in this paragraph.

1.32    "Plaintiff Releasees" shall mean Plaintiffs and all other members of the Settlement Class, and their immediate family members, associates, affiliates, and each and all of their respective past, present employees, attorneys, accountants, insurers, co-insurers and reinsurers, heirs, executors, trustees, general or limited partners or partnerships, limited liability companies, members, personal or legal representatives, estates, administrators, predecessors, successors and assigns or other individuals or entities in which either Plaintiff has a controlling interest or which is related to or affiliated with any Plaintiff.

1.33    "Released Claims" means Released Claims Against Defendants and Released Claims Against Plaintiffs.

1.34    "Released Claims Against Defendants" means any and all claims against all Defendants, (including "Unknown Claims" as defined in ¶ 1.44), debts, disputes, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, sums of money due, judgments, suits, amounts, matters, issues and charges of any kind whatsoever (including, but not limited to, any claims for interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, amounts, or liabilities whatsoever), whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, foreseen or unforeseen, whether individual or class in nature, whether arising under federal or state statutory or common law or any other law, rule, or regulation, whether foreign or domestic, in law, in contract, or in equity, and regardless of legal theory, and including claims for indemnification, contribution, or otherwise denominated, that Plaintiffs or any other member of the Settlement Class: (1)(A) asserted in any of the complaints filed in the Action; or (B) could have asserted, or could in the future assert, in the Action or in any other action or in any other forum that arise out of, are based upon, are related to, or are in consequence of the subject matter of this Action, including any of the facts, allegations, matters, events, disclosures, non-disclosures, occurrences, representations, statements, acts or omissions, or failures to act that were involved, set forth, or referred to in any of the complaints filed in the Action, or that otherwise would have been barred by res judicata had the Action been fully litigated to a final judgment *and* (2) relate, directly or indirectly, to the purchase, acquisition, or sale, or other acquisition or disposition, or holding of publicly-traded Shattuck common stock during the Class Period; provided, however, that Released Claims Against Defendants shall not include claims relating to the enforcement of the Term Sheet or this Stipulation.

1.35    "Released Claims Against Plaintiffs" means all claims (including "Unknown Claims" as defined in ¶ 1.44), rights, demands, suits, matters, issues, liabilities, or causes of action, in law or in equity, of every nature and description whatsoever, under federal, state, local, foreign law, or any other law, rule, or regulation, whether known or unknown, that arise out of or relate in any way to the institution, prosecution, or settlement of claims against the Defendants, including under Rule 11 of the Federal Rules of Civil Procedure.  Released Claims Against Plaintiffs shall not include claims relating to the enforcement of the Term Sheet or this Stipulation.

1.36    "Releasing Plaintiffs" shall mean the Plaintiffs, the Settlement Class, all Settlement Class Members, and the successors and assigns of Plaintiffs and of all Settlement Class Members, in any capacity.

1.37    "Settlement" means the settlement of the Action between Plaintiffs, on behalf of themselves and the Settlement Class, and each of the Defendants on the terms and conditions set forth in this Stipulation.

1.38    "Settlement Amount" means One Million Four Hundred Thousand Dollars ($1,400,000), in cash, to be paid in cash by Shattuck on behalf of all Defendants.

1.39    "Settlement Class" means (1) all persons who purchased Shattuck common stock pursuant or traceable to Shattuck's Initial Public Offering Registration Statement, in connection with the Company's October 9, 2020 Initial Public Offering, on or before November 8, 2021; and (2) all persons who purchased or otherwise acquired the common stock of Shattuck between February 17, 2021 and November 8, 2021, inclusive (the "Class Period"), and who held shares past November 8, 2021. Excluded from the Settlement Class are: (i) Defendants; (ii) any current or former officers or directors of Shattuck who served in such capacities during the Class Period; (iii) members of the immediate family of any current or former officer or director of Shattuck who

served in such capacities during the Class Period; (iv) any entity that any Defendant owns or controls, or owned or controlled, during the Class Period; (v) any affiliates, parents, or subsidiaries of Shattuck; and (vi) the legal representatives, heirs, successors, and assigns of any such excluded persons. Also excluded from the Settlement Class are any persons who submit a request for exclusion from the Settlement Class that is approved by the Court. Defendants will further stipulate, for settlement purposes only, to the appointment of Plaintiffs as the Class Representatives, and to the appointment of Lead Counsel as Class Counsel.

1.40    "Settlement Class Member" means any person or entity that falls within the definition of the Settlement Class as set forth in ¶ 1.39.

1.41    "Settlement Class Period" means those persons or entities who purchased or otherwise acquired publicly traded Shattuck common stock pursuant or traceable to Shattuck's Initial Public Offering Registration Statement, in connection with the Company's October 9, 2020 Initial Public Offering, on or before November 8, 2021, and/or acquired the common stock of Shattuck between February 17, 2021 and November 8, 2021, inclusive, and held shares past November 9, 2021.

1.42    "Settlement Fund" means an interest-bearing escrow account established by the Escrow Agent to receive the amounts of funds payable as described in ¶ 2.0.

1.43    "Settling Parties" means Settlement Class and Defendants.

1.44    "Unknown Claims" shall collectively mean all claims, demands, rights, liabilities, and causes of action of every nature and description which any Releasing Party does not know or suspect to exist in his, her or its favor at the time of the release of the Defendant Releasees which, if known by him, her or it, might have affected his, her, or its settlement with and release of the Defendant Releasees, or might have affected his, her, or its decision not to object to this Settlement.

With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Releasing Parties shall expressly waive, and by operation of the Judgment shall have waived, the provisions, rights and benefits of California Civil Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Releasing Parties shall expressly waive, and by operation of the Judgment shall have, expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542. The Releasing Parties acknowledge, and shall be deemed by operation of law to have acknowledged, that they may hereafter discover facts in addition to or different from those which he, she, or it or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims.  Notwithstanding the foregoing, the Releasing Parties shall expressly, fully, finally and forever settle and release and upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  Releasing Parties acknowledge, and the Releasing Plaintiffs (including all Settlement Class Members) shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

### C.    The Settlement

*The Settlement Consideration*

2.0     In consideration of the full and final settlement of all claims asserted or which could have been asserted against Defendants in this Action, within ten (10) Business Days after the later of (i) entry of an order granting preliminary approval of the Settlement, and (ii) receipt by counsel for the Shattuck Defendants of a W-9, complete wire and transfer instructions for the Escrow Account, and contact name and telephone number of the Escrow Agent to confirm payment, Shattuck shall be solely responsible for causing, and shall cause, the Settlement Amount to be wired to the Escrow Agent so that it may be deposited into the Settlement Fund.  There will be no responsibility or liability on the part of any Voluntarily Dismissed Underwriter to pay or cause to be paid any portion of the Settlement Amount.

*The Escrow Agent*

2.1     The Settlement Amount shall be invested exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. The Escrow Agent shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. Defendants shall not bear any responsibility for or liability related to the investment of the Settlement Amount by the Escrow Agent.

*Return of Funds in Certain Circumstances*

2.2     The Settlement Amount shall include all attorneys' fees, Notice and Administration Expenses, class member benefits, as well as any other costs, expenses, or fees of any kind whatsoever associated with the resolution of the Action. The interest from the Escrow Account

will accrue to the benefit of the Settlement Class if the Court approves the Settlement including the resolution of any appeals taken from the Court's final approval. If the Court does not approve the Settlement or the approval is reversed or vacated on any appeal, the Settlement Amount and interest thereon will be returned to Shattuck less any amount used to provide notice of the Settlement to the Settlement Class.   The Settlement is not a claims-made settlement. Once the Settlement is final and the time for any appeal has expired or the Settlement has been affirmed on appeal, there will be no reversion of any portion of the Settlement Amount to Defendants and/or the Insurers.

***Handling and Disbursement of Funds by the Escrow Agent***

2.3     No monies will be disbursed from the Settlement Fund until after the Effective Date except as provided in ¶¶ 2.9-2.15, as regards Taxes, and ¶¶ 8.0-8.5 and ¶¶ 9.0-9.1, as regards attorneys' fees and expenses and reimbursements to Plaintiffs, or for Notice and Administration Expenses, as provided in ¶ 2.7; and

2.4     Before the Effective Date, the Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the written agreement of counsel for the Shattuck Defendants and Lead Counsel.

2.5     Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions on behalf of the Settlement Class as are consistent with the terms of this Stipulation.

2.6     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed or returned to the parties who deposited such funds pursuant to this Stipulation and/or further order(s) of the Court.

2.7    The Settlement Fund shall be used by the Escrow Agent to pay Notice and Administration Expenses. It is understood that, subject to court approval, Notice and Administration Expenses shall be paid solely from the Escrow Account. Defendants shall not bear any cost or responsibility for Notice and Administration expenses, except that Shattuck shall be solely responsible for paying, and shall pay, the costs of providing Shattuck's Class Member Lists and notice pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 et seq. ("CAFA"), if any. If the Settlement is not consummated, money reasonably paid or incurred for this purpose, including any related fees, shall not be repaid or returned.

2.8    No later than ten (10) calendar days following the filing of this Stipulation with the Court, Shattuck, on behalf of all Defendants, shall serve the notice required under CAFA. At least seven (7) calendar days before the Settlement Hearing, Shattuck, on behalf of all Defendants, shall serve on Lead Counsel and file with the Court an affidavit or declaration regarding compliance with the CAFA notice requirements.

*Taxes*

2.9.    The Parties and the Escrow Agent agree to treat the Settlement Funds as "qualified settlement funds" within the meaning of Treasury Regulation §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of ¶¶ 2.9-2.15, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

2.10.    The Claims Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treasury Regulation §1.468B-2(k)).  Such returns (as well as the election described in ¶¶ 2.9-2.15 shall be consistent with this and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties on the income earned) shall be paid out of the Settlement Fund.

2.11.    All Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, and expenses and costs incurred in connection with the operation and implementation of ¶¶ 2.9-2.15 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses or penalties relating to filing (or failing to file) the returns described in ¶ 2.9-2.15) ("Tax Expenses"), shall be paid out of the Settlement Fund.

2.12.    Defendants, Defendants' Counsel, Plaintiffs, and Lead Counsel shall have no liability or responsibility for the Taxes or the Tax Expenses.  Taxes and Tax Expenses shall be treated as, and considered to be, a Notice and Administration Expense, and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court.

2.13.    The Escrow Agent shall indemnify and hold each of the Defendants, Defendants' Counsel, Plaintiffs and Lead Counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).

2.14.    The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation §1.468B-

2(l)(2)).  Neither Defendants, Defendants' Counsel, Plaintiffs, nor Lead Counsel are responsible therefor, nor shall they have any liability with respect thereto.

2.15.   The Parties agree to cooperate with the Escrow Agent, each other, and any involved tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of ¶¶ 2.3–2.15  Upon written request, the Shattuck Defendants will promptly provide the Escrow Agent with the statement described in Treasury Regulation §1.468B-3(e).

***Termination of Settlement***

2.16.   Either the Plaintiffs or the Shattuck Defendants shall have the right to terminate the Settlement and this Stipulation, by providing written notice of their election to do so to all other Parties within fifteen   (15) Business Days of: (a) the Court's denial of Plaintiffs' motion for preliminary approval of the Settlement in any material respect without leave to amend and resubmit; (b) the Court's refusal to approve this Stipulation or any material part of it without leave to amend and resubmit; (c) the Court's declining to enter an Order and Final Judgment in any material respect without leave to amend and resubmit; or (d) the date upon which the Order and Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court.  Any decision with respect to any Fee and Expense Application, or with respect to any Plan of Allocation, shall not be considered material to this Stipulation and shall not be grounds for termination.

2.17.   If this Stipulation is terminated, the Settlement Amount including any interest accrued thereon, less expenses actually incurred or due and owing from the Settlement Fund for the Notice and Administration Expenses pursuant to ¶ 2.7 above, shall be refunded by check or wire transfer in accordance with the instructions to be provided by counsel for the Shattuck Defendants.

2.18.   If the Settlement Amount is not paid into the Escrow Account in accordance with ¶ 2.0 of this Stipulation, then Plaintiffs, on behalf of the Settlement Class, shall have the right to (a) terminate the Settlement and Stipulation by providing written notice to the Defendants at any time prior to the Court's entry of the Final Judgment; or (b) enforce the terms of the Settlement and this Stipulation and seek a judgment effecting the terms herein.

2.19.   If, prior to the Final Approval Hearing, any persons who otherwise would be members of the Settlement Class have timely filed for exclusion from the Settlement Class in accordance with the provisions of the Order of Preliminary Approval and the notice given pursuant thereto, and such persons in the aggregate purchased a number of shares of Shattuck securities during the Settlement Class Period in an amount greater than the sum specified in a separate "Supplemental Agreement" between Plaintiffs and the Shattuck Defendants, the Shattuck Defendants, in their sole discretion, acting collectively, shall have the option to terminate this Stipulation in accordance with the procedures set forth in the Supplemental Agreement.  The Supplemental Agreement is confidential and shall not be filed with the Court and its terms shall not be disclosed in any other manner unless requested by the Court or a dispute arises among the Shattuck Defendants and Plaintiffs concerning the Supplemental Agreement's interpretation or application.  If submission of the Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by the Court, Plaintiffs and the Shattuck Defendants will undertake to have the Supplemental Agreement submitted to the Court *in camera.*  Copies of all Requests for Exclusion received and copies of all written revocations of Requests for Exclusion received shall be sent to counsel for the Parties within a reasonable time of receipt by the Claims Administrator, and in any event not less than fourteen (14) days prior to the Final Approval Hearing.

2.20.   If: (i) the Shattuck Defendants exercise their right to terminate the Settlement as provided in this Stipulation; (ii) Plaintiffs exercise their right to terminate this Settlement as provided in this Stipulation; (iii) the Court disapproves the Settlement; or (iv) the Effective Date as to the Settlement otherwise fails to occur with respect to the Defendants, then:

       a.   The Settlement and the relevant portions of this Stipulation shall be canceled and terminated without prejudice, and this Stipulation shall be null and void and shall have no further force or effect; and

       b.   Plaintiffs and the Shattuck Defendants shall revert to their respective positions in the Action on December 13, 2022, and the Voluntarily Dismissed Underwriters will remain dismissed from the Action.

**D.   Class Certification**

3.0   Defendants will stipulate to certification of the Settlement Class for settlement purposes only.

**E.   Preliminary Approval Order**

4.0   Within ten (10) calendar days of execution of this Stipulation, Lead Counsel shall submit this Stipulation together with its Exhibits to the Court and shall request entry of an Order of Preliminary Approval, the Long Notice, the Publication Notice, the Postcard Notice, the Claim Form, and the Final Approval Order, (substantially in the form of Exhibits A-F).

4.1   Within ten (10) Business Days after entry of the Court's order preliminarily approving the settlement, the Company, at no cost to the settlement fund, Lead Counsel, or the claims administrator, shall provide or cause to be provided to Lead Counsel or the claims administrator in electronic format its security lists (consisting of names and addresses) of the record purchasers of Shattuck common stock during the Class Period. Lead Counsel, through the claims administrator, shall make reasonable efforts to give notice to nominee owners, who will

then be given reasonable time to forward notice to their beneficial owners or to provide the claims administrator lists of the names and addresses of the beneficial owners.

**F.    Releases**

5.0    The obligations incurred pursuant to this Stipulation shall be a full and final disposition of the Action as against all Defendants, and shall fully, finally, and forever compromise, settle, release, resolve, relinquish, waive, discharge, and dismiss with prejudice, the Action and any and all Released Claims Against Defendants against each and all of the Defendant Releasees upon the occurrence of the Effective Date.

5.1    Upon the Effective Date, Releasing Plaintiffs shall be deemed to have, and by operation of law and of the Judgment shall have fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, discharged, and dismissed with prejudice each and every one of the Released Claims Against Defendants as against all the Defendant Releasees, and shall forever be barred and enjoined, to the fullest extent permitted by law, from commencing, instituting, maintaining, prosecuting, or continuing to prosecute any or all of the Released Claims Against Defendants as against any and all the Defendant Releasees, in this Action or in any other proceeding.

5.2    Upon the Effective Date, Releasing Defendants shall be deemed to have released, and by operation of the Judgment shall have released, all Released Claims Against Plaintiffs as against all the Plaintiff Releasees.

**G.    Proofs of Claim**

6.0    Only those Settlement Class Members filing a valid and timely Proof of Claim shall be entitled to participate in the Settlement and receive a distribution from the Settlement Fund.

6.1    All Settlement Class Members not submitting valid and timely Requests for Exclusion shall be bound by the Releases, whether or not they submit a valid and timely Proof of

Claim.

**H.    Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

7.0    The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Fund (defined below) to Authorized Claimants.  The distribution checks will be drawn upon the Settlement Fund.

7.1    Defendants shall have no responsibility or liability for the allocation of the Settlement Fund among the Settlement Class Members or the allocation of any awards of Lead Plaintiffs' attorneys' fees, costs and expenses.  Any such awards shall be paid solely by the Settlement Fund.

7.2    The Settlement Fund shall be applied as follows:

    a.  To pay the Taxes and Tax Expenses described in ¶¶ 2.9-2.15 above;

    b.  To pay Notice and Administration Expenses;

    c.  To pay Lead Counsel's attorneys' fees and expenses, as provided in Section 8 (the "Fee and Expense Award"), and a Compensatory Award to Plaintiffs, as provided in ¶ 9.0,  to the extent allowed by the Court;

    d.  Upon court approval, to distribute the balance of the Settlement Fund, that is, the total Settlement Fund less the items set forth in ¶¶ 7.2 a.-c. (the "Net Settlement Fund"), to the Authorized Claimants as allowed by this Stipulation, the Plan of Allocation, or the Court.

7.3    Upon the entry of the Judgment and thereafter, subject to ¶ 2.3 and in accordance with the terms of the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants.  Payment pursuant to the Court's approval of the Plan of Allocation or a

plan of allocation shall be final and conclusive on all Settlement Class Members. Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a Proof of Claim by the Bar Date, or such other period as may be ordered by the Court, or otherwise allowed, or who file a Proof of Claim that is rejected, shall be forever barred from receiving any payments pursuant to this Stipulation and Settlement. No Person shall have any claim against Plaintiffs, Lead Counsel, Defendants, Defendants' Counsel, the Claims Administrator, the Escrow Agent, or any other agent designated by Lead Counsel based on distribution determinations or claim rejections made substantially in accordance with this Stipulation and the Settlement contained therein, the Plan of Allocation, or further orders of the Court.

7.4     Claim Forms shall be submitted to and reviewed by the Claims Administrator who shall determine in accordance with this Stipulation and the plan of allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to ¶ 7.6 below as necessary.

7.5     Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted. The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of the following paragraph.

7.6     If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within ten (10) days after the date of mailing of the notice

required in the preceding paragraph or such other time as may be provided in the preliminary approval order of the Court, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

7.7     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however, that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's Claim.  No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of Claim Forms.

7.8     The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice and approved by the Court.  However, if there is any balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), the Claims Administrator under the supervision of Lead Counsel shall, if feasible, reallocate such balance among Authorized Claimants in an equitable and economic fashion. Thereafter, any balance that still remains in the Net Settlement Fund shall be donated to the Howard University Investor Justice & Education Clinic.

7.9     This is not a claims-made settlement; there will be no reversion of settlement funds to Defendants, their Insurers, or any other person or entity who or which funded the Settlement Amount if the Settlement becomes final.

7.10    Defendants and Defendant Releasees shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.

7.11    Any order or proceedings relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the finality of the Court's Judgment approving this Stipulation and the Settlement set forth therein, or any other orders entered pursuant to this Stipulation. Plaintiffs and Lead Counsel may not cancel or terminate the Settlement or this Stipulation based on any ruling by the Court or any appellate court with respect to the Plan of Allocation or any other plan of allocation in this Action.

## I.    Attorneys' and Plaintiffs' Fees and Expenses

*Attorneys' Fees*

8.0    Lead Counsel may submit an application or applications (the "Fee and Expense Application") for payments to Lead Counsel from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) reimbursement of actual costs and expenses, including experts or consultants, incurred in connection with prosecuting the Action as may be awarded by the Court. Lead Counsel reserves the right to make additional applications for fees and expenses incurred, if necessary.

8.1    Any award of attorneys' fees, costs, and expenses approved by the Court shall be paid solely from the escrow account containing the settlement fund immediately upon final approval of the settlement by the Court and the entry of an order awarding fees and expenses, notwithstanding any appeals.  Should an appellate court later reverse the Court's final approval of the Settlement, Lead Counsel shall repay all such attorney's fees and expenses awarded. Defendants and all entities under any Defendant's control shall take no position on any Lead

Counsel's application for an award of attorneys' fees, reimbursement of costs and expenses, or Compensatory Awards. If the Settlement is terminated or if, as a result of any appeal or further proceedings, the Fee and Expense Award is reduced or reversed, Lead Counsel shall repay fees and expenses accordingly, including accrued interest on the fees at the same net rate as is earned by the Settlement Fund.

8.2     Lead Counsel further agrees to refund to the Settlement Fund any award of attorney's fees and expenses by the Court paid to Lead Counsel in the event that this Settlement does not become Final; in such situation, payment of all of the Fee Award shall be made by Lead Counsel into the Settlement Fund within ten (10) calendar days thereof, and shall thereafter be distributed by the Escrow Agent pursuant to the terms of ¶ 10.4.

8.3     If the Fee and Expense Award is reduced or reversed on appeal, Lead Counsel shall make all necessary refunds and repayments into the Settlement Fund no later than fifteen (15) calendar days after any order that reverses or reduces any award of attorneys' fees or expenses, which shall be distributed by the Escrow Agent to the Settlement Class pursuant to the manner directed in the Final order.

8.4     Defendants and the Defendant Releasees shall have no responsibility for, and no liability whatsoever with respect to, the Fee and Expense Award or for any payment to Lead Counsel and/or any other Person who receives payment from the Settlement Fund.

8.5     Defendants and the Defendant Releasees shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Lead Counsel and/or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

***Plaintiffs' Compensatory Award***

9.0     Lead Counsel may submit an application to the Court to authorize the payment of Compensatory Award from the Settlement Fund for the time and expenses expended by the Plaintiffs in assisting Lead Counsel in the litigation of this Action.  Payment for any Compensatory Award payable in cash shall be payable to Plaintiffs immediately upon final approval of the Settlement

9.1     Defendants and the Defendant Releasees shall have no responsibility for, and no liability whatsoever with respect to, any such Compensatory Award.

**K.     Effect of Disapproval, Cancellation, or Termination**

10.0    The Effective Date of the Stipulation shall be conditioned upon the occurrence of all of the following events:

(a)     Shattuck, on behalf of all Defendants, has caused the contributions to be made to the Settlement Fund, as required by ¶ 2.0 above;

(b)     the Court has entered the Judgment, or a judgment substantially in the form of Exhibit F attached hereto; and

(c)     the Judgment has become Final, as defined in ¶ 1.15 hereof.

10.1    Any appeal or delay in (a) the approval of the Plan of Allocation, (b) the determination of the Fee and Expense Award, or (c) the granting of a Compensatory Award to Lead Plaintiff, shall not affect, alter, or delay the occurrence of the Effective Date.

10.2    Upon the occurrence of the Effective Date, any and all interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished, except as set forth in this Stipulation.  The Settlement Fund shall be distributed in accordance with ¶ 7.2 hereof.

10.3    If this Stipulation is not approved by the Court, or the Effective Date does not occur, then this Stipulation shall be canceled and terminated subject to ¶ 2.16 and this ¶ 10.3 unless Lead

Counsel and Defendants' Counsel mutually agree in writing to proceed with this Stipulation.  None of the Parties, or any of them, shall have any obligation whatsoever to proceed under any terms other than provided for and agreed herein. Without limitation of any Party's other rights or remedies at law or in equity to enforce its rights against any other Party that breaches its obligations under this Stipulation, no breach by any Party of its obligations under this Stipulation shall permit any other Party to terminate this Stipulation or, after the Effective Date, affect or impair the disposition of the Action or release of claims contemplated by ¶ 5.1.

10.4    Unless otherwise ordered by the Court, in the event the Stipulation is terminated, or is canceled, or shall not become effective for any reason, within ten (10) Business Days after written notification of such event is sent by counsel for the Shattuck Defendants or Lead Counsel to the Escrow Agent, subject to the terms of ¶¶ 2.9-15 hereof, the Settlement Fund (including accrued interest), less any expenses and any costs which have either been properly disbursed pursuant to ¶¶ 2.3-2.6 hereof, or are determined to be chargeable to the Settlement Fund pursuant to ¶ 2.7 hereof, shall be refunded by the Escrow Agent to Shattuck, plus accrued interest attributable to that amount, by check or wire transfer pursuant to written instructions from Shattuck.  At the request of the Shattuck Defendants, the Escrow Agent or its designee shall apply for any tax refund owed to the Settlement Fund and pay the proceeds, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund, to Shattuck.

10.5    If the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become final in accordance with its terms, the Parties shall be restored to their respective positions in the Action, if any, immediately prior to the execution of this Stipulation, with the Voluntarily Dismissed Underwriters remaining voluntarily dismissed from the Action.  Then, the terms and provisions of the Stipulation, with the exception of ¶¶ 1.0-

1.36 (as applicable and relating to termination of the Stipulation) and ¶¶ 10.2-10.5 hereof, shall have no further force and effect and shall not be used in this Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, expenses and interest awarded by the Court to Lead Counsel shall constitute grounds for cancellation or termination of the Stipulation.

10.6    If the Effective Date does not occur, none of Plaintiffs, Lead Counsel, the Claims Administrator, or the Escrow Agent shall have any obligation to repay any Notice and Administration Expenses actually and properly disbursed from the Settlement Fund. In addition, any Notice and Administration Expenses already incurred and properly chargeable to the Settlement pursuant to this Stipulation at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶ 10.4.

### L.    Miscellaneous Provisions

11.0    This Stipulation (whether or not consummated), and all related documents, including the exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation approved by the Court), the negotiations leading to the execution of this Stipulation, and the approval of the Settlement (including any arguments proffered in connection therewith): (a) shall not be construed as or deemed to be evidence of (i) any presumption, admission, or concession on the part of any Defendant, Defendants' Counsel, insurer, or any of the Defendant Releasees (as defined in ¶ 1.31) with respect to any claim of any fact alleged by Plaintiffs or any Settlement Class Member, the validity of any claim that was or could have been asserted by Plaintiffs or any Settlement Class Member, or any deficiency of any defense that has been or could

have been asserted by the Defendants in this Action or in any other litigation or proceeding, or (ii) any deception, negligence, fault, liability, wrongdoing, or damage whatsoever and of any kind of any Defendant or any of the Defendant Releasees or in any way referred to for any other reason as against any Defendant or any of the Defendant Releasees, in any civil, criminal, or administrative action or proceeding; and (b) shall not be offered against any of the Plaintiffs' Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiff Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; and (c) shall not be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; *provided, however*, that if this Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement. The Parties, and each of them, shall not assert or pursue any action, claim or rights that any party hereto violated any provision of Rule 11 of the Federal Rules of Civil Procedure.  Further, the Parties, and each of them, will not deny in any statement made to any media representative that the Action is being settled voluntarily after consultation with competent counsel.  The Parties, and each of them, and their respective counsel agree that the Action was resolved in good faith, following arm's length bargaining.

11.1    The Parties (a) acknowledge that it is their intent to consummate this Stipulation; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Stipulation. Lead Counsel and Defendants' Counsel agree to cooperate with one another in seeking Court approval of the Order of Preliminary Approval, the Stipulation, and the Settlement, and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Settlement.

11.2    The Parties intend this Stipulation to be a final and complete resolution of all disputes between them with respect to the Action, as well as any disputes which could have been raised in the Action, by (1) Plaintiffs, the Settlement Class, and the Releasing Plaintiffs, and each or any of them, against Defendants and Defendant Releasees, Defendants' Counsel, and each or any of them, on the one hand; and (2) by Defendants and each or any of them, against Plaintiffs and the Plaintiff Releases, and each or any of them, on the other hand. Accordingly, the Parties agree not to assert that the Action was brought by Plaintiffs or defended by any of the Defendants, or each of them, in bad faith or in a manner that violates any rules of professional conduct or Federal Rule of Civil Procedure 11 in any legal proceeding nor, unless none of the Parties or Counsel are identified by name, in any forum or in any statement made to any media representative.  Defendants reserve the right to state their belief that the Action did not have any legal or factual merit, and Plaintiffs reserve the right to state their belief that the Action had legal and factual merit.  The Judgment will contain a statement that during the course of the Action, the Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure. The Parties further agree that the amount paid to the Settlement

Fund and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

11.3    Except as otherwise provided herein, all agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Stipulation.

11.4    The Settlement contemplated herein is not subject to or contingent upon confirmatory discovery or other discovery.

11.5    Whether or not the Effective Date occurs or this Stipulation is terminated, this Stipulation and the Settlement contained herein, and any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement (i) may not be deemed, and shall not be used, offered, or received against any of the Defendants or Defendant Releasees, or each or any of them, as an admission, concession, or evidence of, the validity of any of the Released Claims Against Defendants, the truth of any fact alleged by Plaintiffs, the deficiency of any defense that has been or could have been asserted in the Action, or of any alleged wrongdoing, liability, negligence, or fault of any of the Defendants and Defendant Releasees; and (ii) may not be deemed, and shall not be used, offered or received against any of Plaintiffs, the Settlement Class, or Plaintiff Releasees, as an admission, concession, or evidence of, the validity or invalidity of any of the Released Claims Against Plaintiffs, the infirmity or strength of any claims raised in the Action, the truth or falsity of any fact alleged by Defendants, or the availability or lack of availability of meritorious defenses to the claims raised in the Action.

11.6    If this Stipulation is approved by the Court, any Party, any of the Defendant Releasees, or any of the Plaintiff Releasees may file this Stipulation and/or Judgment in any action

that may be brought against such party or parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

11.7   The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

11.8   The waiver by one party of any breach of this Stipulation by any other party shall not be deemed as a waiver of any other prior or subsequent breaches of this Stipulation.

11.9   All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

11.10   This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

11.11   This Stipulation its Exhibits attached hereto, and the Supplemental Agreement constitute the entire agreement among the Parties hereto concerning the Settlement. All Parties acknowledge that no representations, warranties, or inducements have been made to any party concerning this Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. Except as otherwise provided herein, each Party shall bear his, her, or its own costs.

11.12 Each counsel or other person executing this Stipulation, any of its Exhibits, or any related settlement documents on behalf of any party warrants and represents that such person has the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

11.13   This Stipulation may be executed in one or more counterparts, including transmitted electronically.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Stipulation all exchange original signed counterparts.

11.14   This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Defendant Releasees and Plaintiff Releasees.

11.15   The Parties acknowledge that the Court will retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation and submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

11.16   This Stipulation and the attached Exhibits shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of New York and the rights and obligations of the parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to that State's choice of law principles, except to the extent that federal law requires that federal law govern.

11.17   This Stipulation is deemed to have been prepared by counsel for all Parties, as a result of arm's length negotiations among the Parties.  Whereas all Parties have contributed substantially and materially to the preparation of this Stipulation, it shall not be construed more strictly against one Party than another.

11.18   Whenever this Stipulation requires or contemplates that a Party shall or may give notice to the other, notice shall be provided by electronic mail and shall be deemed effective upon such transmission or delivery to the addresses set forth below:

If to Plaintiffs, then to:          Jonathan Horne
                                    **THE ROSEN LAW FIRM, P.A.**

jhorne@rosenlegal.com

If to Defendants, then to:   Michael Biles
**KING & SPALDING LLP**
mbiles@kslaw.com

Jay B. Kasner
Susan L. Saltzstein
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP**
jay.kasner@skadden.com
susan.salzstein@skadden.com

  11.19 In computing any period of time prescribed or allowed by this Stipulation or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.

  11.20 The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Stipulation.

  IN WITNESS WHEREOF, the Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, dated December 14, 2022.

**THE ROSEN LAW FIRM, P.A.**

/s/<u>Jonathan Horne</u>

Jonathan Horne
 **ROSEN LAW FIRM**
 275 Madison Avenue, 40th floor
 New York, NY 10016

*Lead Counsel for Plaintiffs*

**KING & SPALDING LLP**

/s/<u>Michael J. Biles</u>

Michael J. Biles (5519467)
Jill R. Carvalho (admitted pro hac vice)
Frances R. Fink (admitted pro hac vice)

KING & SPALDING LLP
500 W. 2nd Street, Suite 1800
Austin, TX 78701
Tel: 512.457.2050
Fax: 512.457.2100
mbiles@kslaw.com
jcarvalho@kslaw.com
ffink@kslaw.com

Paul R. Bessette (4637609)
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-2601
Tel: 212.556.2120
Fax: 212.556.2222
pbessette@kslaw.com

*Counsel for Defendants Shattuck Labs Inc.,
Taylor Schreiber, Andrew Neill, Josiah
Hornblower, Helen M. Boudreau, Neil
Gibson, George Golumbeski, Michael Lee,
Tyler Brous, and Victor Stone*

37

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP**

Jay B. Kasner
Susan L. Saltzstein
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP**
One Manhattan West
New York, NY 10001
Tel: 212.735.3000
Fax: 212.735.2000

*Counsel for Voluntarily Dismissed Underwriters Citigroup Global Markets Inc., Cowen and Company, LLC, Evercore Group L.L.C., and Needham & Company, LLC*