**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Shattuck Labs, Inc. Securities Litigation | Case No. 1:22-cv-00560-CBA-RML |
| CLASS ACTION | |
| | CLASS ACTION |
| This Document Relates To: | |
| All Actions | |

**DECLARATION OF JONATHAN HORNE IN SUPPORT OF THE MOTIONS FOR: (I) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARDS TO PLAINTIFFS**

## TABLE OF EXHIBITS TO DECLARATION

| EXHIBIT | TITLE |
|---------|-------|
| 1 | Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Dissemination of the Publication Notice; and (C) Report on Requests for Exclusion and Objections |
| 2 | Declaration of Scott Harrison |
| 3 | Declaration of Andrea Viti |
| 4 | Excerpts from Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Economic Consulting 2023) |
| 5 | Declaration of Laurence M. Rosen Concerning Attorneys' Fees and Expenses (Dkt. No. 366) in the matter *In re Global Brokerage, Inc. f/k/a FXCM Inc. Securities Litigation,* No. 1:17-cv-00916-RA-BCM (S.D.N.Y.) |
| 6 | Order and Final Judgment entered on July 7, 2023 in *In re Global Brokerage, Inc. f/k/a FXCM Inc. Securities Litigation*, No. 1:17-cv-00916- RA-BCM, (S.D.N.Y.) (Dkt. No. 374) |
| 7 | Declaration of Laurence Rosen (Dkt. No. 182-3) in the matter *In re Zillow Group, Inc. Securities Litigation*, No. 2:17-cv-01387-JCC (W.D. Wash.) |
| 8 | Order and Final Judgment entered on August 8, 2023 in *In re Zillow Group, Inc. Securities Litigation*, No. 2:17-cv-01387-JCC, slip op. (W.D. Wash.) (Dkt. No. 186) |
| 9 | Declaration of Laurence M. Rosen on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses (Dkt. No. 44-2) in the matter *Bell v. Kanzhun Limited, et al.*, Case No. 2:21-cv-13543-MAH (D.N.J.) |
| 10 | Order Awarding Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff earned on April 5, 2023 in *Bell v. Kanzhun Limited, et al.*, Case No. 2:21-cv-13543-MAH (D.N.J.) (Dkt. No. 53) |
| 11 | Rosen Law Firm resume |

I, Jonathan Horne, declare under penalty of perjury that:

1.       I am a Partner at The Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Lead Counsel for Lead Plaintiff Scott Harrison ("Lead Plaintiff" and Named Plaintiff Andrea Viti (with Harrison, "Plaintiffs"). I oversaw litigation of the Action.[1] I am familiar with the proceedings in this litigation, and I have personal knowledge of the matters set forth herein based upon participating in all aspects the Action.

2.       I submit this declaration, together with the attached exhibits, in support of Plaintiffs' Motions for: (I) Final Approval of Class Action Settlement and Plan of Allocation; and (II) an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiffs. As set forth in the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation ("Final Approval Memorandum"), Plaintiffs seek final approval of the $1,400,000 Settlement for the benefit of the Settlement Class, as well as final approval of the proposed Plan of Allocation of the Net Settlement Fund to eligible Settlement Class Members.[2]

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Stipulation of Settlement (the "Stipulation") dated December 14, 2022 (Dkt. No. 39) or the Corrected Consolidated Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint") (Dkt. No. 30).

[2] The Settlement Class is defined as "(1) all persons who purchased Shattuck common stock pursuant or traceable to Shattuck's Initial Public Offering Registration Statement, in connection with the Company's October 9, 2020 Initial Public Offering, on or before November 8, 2021; and (2) all persons who purchased or otherwise acquired the common stock of Shattuck between February 17, 2021 and November 8, 2021, inclusive (the "Class Period"), and who held shares past November 8, 2021. Excluded from the Settlement Class are: (i) Defendants; (ii) any current or former officers or directors of Shattuck who served in such capacities during the Class Period; (iii) members of the immediate family of any current or former officer or director of Shattuck who served in such capacities during the Class Period; (iv) any entity that any Defendant owns or controls, or owned or controlled, during the Class Period; (v) any affiliates, parents, or subsidiaries of Shattuck; and (vi) the legal representatives, heirs, successors, and assigns of any such excluded persons. Also excluded from the Settlement Class are any persons who submit a request for

3.      The purpose of this Declaration is to set forth to the Court facts which do not otherwise appear in documents filed in this case or other public sources. A complete description of the nature of the claims asserted and the procedural history of the Action, the reasons why the settlement, plan of allocation, and fee and expense requests should be approved are set out in the memoranda of law in support of the Motions.

4.      As set forth in the Memorandum of Law in Support of the Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Plaintiffs ("Fee Memorandum"), Lead Counsel seek an award of attorneys' fees in the amount of one-third of the Settlement Fund (which, by definition, includes interest accrued thereon), reimbursement of litigation expenses of $52,872.98, and an Award to Plaintiffs of $3,000 in total or $3,000 each, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for the time they devoted to their representation of the Settlement Class.

## I.      PLEADINGS

5.      To draft the Amended Complaint (Dkt No. 30), Lead Counsel: (a) scoured public documents, including SEC filings, significant contracts, transcripts of presentations and conference calls, public information Shattuck filed about its clinical trials, as well as information concerning immuno-oncology and FDA policies; (b)  retained an investigator to identify and interview former Shattuck employees; (c) personally interviewed all former Shattuck employees cited in the Complaint; (d) hired a consulting expert to help explain immuno-oncology, fusion proteins, and the customs and practices of companies conducting clinical trials; and (e) hired a financial expert to create preliminary damages models under various conditions.

---

exclusion from the Settlement Class that is approved by the Court. Defendants will further stipulate, for settlement purposes only, to the appointment of Plaintiffs as the Class Representatives, and to the appointment of Lead Counsel as Class Counsel." Stipulation ¶B(1.39).

6.    Plaintiffs spent more than 150 hours drafting the Amended Complaint.

7.    After reviewing Defendants' motion to dismiss the Amended Complaint and beginning to draft a response, Plaintiffs decided that they could address purported deficiencies raised in Defendants' motion by amending the Amended Complaint.

## II.    DISCOVERY

8.    Plaintiffs would retain a financial expert to establish (a) that Shattuck's shares traded on an efficient market, (b) loss causation, and (c) damages.

9.    According to Yahoo! finance, Shattuck's market capitalization was $64.1 million as of September 22, 2023.

## III.    SETTLEMENT DISCUSSIONS

10.    The Parties engaged in zealous, hard-fought settlement discussions. The negotiations were initiated at an opportune time, just when the Parties were about to expend significant resources drafting, and briefing a motion to dismiss, the Second Amended Complaint. The negotiations concluded in a relatively short amount of time because the Parties themselves— and not just their attorneys—focused their attention on the settlement negotiations. Because counsel had their clients' ears, Plaintiffs and Defendants were able to reach a settlement in relatively short order.

## IV.    EVALUATION OF THE CASE

11.    Plaintiffs anticipate that throughout the course of litigation, they will need to regularly consult with: (a) a financial economist, (b) an immuno-oncology expert, and (c) an expert on clinical trials.

12.    These experts would be necessary for the following tasks, at a minimum: (a) understanding documents Defendants and third parties produced; (b) interpreting scientific evidence; and (c) preparing for and holding fact depositions.

13.    The Complaint alleges that the truth concealed by Defendants' false statements was revealed on November 9, 2021. That same day: (a) Shattuck published a press release announcing details of its Q3 2021 earnings, and (b) three other posters presenting the results of other Shattuck clinical trials were publicly released.

14.    Plaintiffs' expert estimated maximum non-duplicative damages of $99.5 million. This estimate does not disaggregate the impact of other news released on November 9, 2021.

15.    That Defendants' statements concerned early Phase I clinical trials rather than later Phase III clinical trials makes this case more difficult.

16.    Lead Counsel pursued a theory that the Takeda Agreement may have ended because Defendants and/or Takeda persistently failed to adhere to FDA lab practices and manufacturing requirements.

V.    SETTLEMNENT ADMINISTRATION

17.    Lead Counsel formulated the Plan of Allocation with the assistance of their damages expert.

18.    Lead Counsel has not received any objections to any aspect of the Settlement or request for exclusion.

VI.    LODESTAR

19.    There are no fee-sharing agreements in this case.

20.    The chart below is a summary of time expended by the attorneys at Rosen Law on the Action as of September 24, 2023, and the lodestar calculation based on their current billing rate. The chart was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm.

| Professional (Position)* | Hourly Rate | Hours Worked | Lodestar |
|---|---|---|---|
| Laurence Rosen (P) | $1,075 | 12.6 | $13,545.00 |
| Phillip Kim (P) | $1,025 | 4.4 | $4,510.00 |
| Jonathan Horne (P) | $950 | 259.6 | $246,620.00 |
| Yu Shi (P) | $875 | 0.8 | $875.00 |
| Robin Bronzaft Howald (C) | $850 | 0.5 | $425.00 |
| Mary Jane Fait (C) | $850 | 17.8 | $15,130.00 |
| Erica L. Stone (C) | $800 | 27.25 | $21,800.00 |
| Michael Cohen (A) | $700 | 7.5 | $5,250.00 |
| Scott Kim (A) | $625 | 8.2 | $5,125.00 |
| Ryan Hedrick (A) | $550 | 7.1 | $3,905.00 |
| Zachary Stanco (PL) | $275 | 1.5 | $412.50.00 |
| **Total** | | **347.45** | **$317,597.50** |
| **Requested fee** | | **$466,667** | |
| **Multiplier** | | **1.47** | |

\* Partner (P), Counsel (C), Associate (A), Paralegal (PL)

21.     My firm performed 347.45  professional work hours in the prosecution of the Action. The total lodestar amount for my firm is $317,597.50.

22.     Rosen Law expended a total of $52,872.98 in un-reimbursed expenses in connection with the prosecution of the Action broken down as follows:

5

**LIST OF UNREIMBURSED EXPENSES**

| Category | Amount |
|---|---|
| Investigator Fees | $20,041.50 |
| Financial Expert Fees | $7,266.00 |
| Immunotherapy Expert | $15,000.00 |
| Online Computer Legal Research and Document Retrieval Fees | $1,425.89 |
| Court Filing Fees | $402.00 |
| Press Releases and Notice to Class Members Fees | $8,650.09 |
| Travel, Transportation, Hotels, and Meals Fees | $87.50 |
| **TOTAL EXPENSES** | **$52,872.98** |

23.    The expenses set forth above are reflected in Lead Counsel's books and records. These books and records are prepared from expense vouchers, check records, and financial statements prepared in the normal course of business for my firm and are an accurate record of the expenses incurred in the prosecution of the Action.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 25, 2023

*/s/ Jonathan Horne*
Jonathan Horne

6